IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Heather B. Black, ) | |
| ) | Civil Action No. 6:24-cv-04888-JDA-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| St. Francis Hospital, Inc., d/b/a ) | |
| St. Francis Hospital, Downtown[1], ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant St. Francis Hospital, Inc., d/b/a St. Francis Hospital, Downtown's motion to stay litigation and compel arbitration or, alternatively, to dismiss (doc. 7). Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

### I. FACTS PRESENTED

Plaintiff Heather B. Black sues her former employer, the defendant, alleging violations of the Family Medical Leave Act (29 U.S.C. § 2611, *et seq.*) ("FMLA") and the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*) ("ADA") (doc. 1-1 at pp. 8–10). In her complaint, the plaintiff alleges she began working for the defendant as a patient relations manager in April 2022 (*id.* at ¶ 10). The plaintiff has an autoimmune disease which causes flare-ups that can make working difficult at times and requires medical appointments (*id.* at ¶ 12). The plaintiff alleges that she notified her employer of this

---

[1] The defendant advises that it is properly identified and will accept service as St. Francis Hospital, Inc., d/b/a St. Francis Hospital, Downtown (doc. 1 at 1 n. 1; doc. 3 at 2), and that Bon Secours Mercy Health, Inc., is its parent corporation (doc. 1 at 1 n. 1). The clerk is directed to note this change.

condition when she was hired, and communicated each planned absence with her manager and worked extra hours to make up for missed time (*id.* at ¶¶ 13–14).

On August 4, 2022, the defendant gave the plaintiff a "final" written warning due to several absences, and in response, the plaintiff explained to the defendant that these absences were due to her medical condition (*id.* at ¶¶ 15–16). She had several later absences, with doctor's notes, and in January 2023,[2] she told her supervisor that she planned to file for FMLA leave when she became eligible (*id.* at ¶¶ 17–18). The plaintiff became FMLA eligible in April 2023 and received her FMLA certification forms from a third-party administrator on June 7, 2023 (*id.* at ¶¶ 19, 21). After the plaintiff provided the forms to her doctor, her doctor returned the signed forms to the defendant by June 23, 2023 (*id.* at ¶ 21).

On June 4, 2023, the plaintiff notified her supervisor that she would be out of work due to a flare-up of her condition, and on June 6, 2023, she sent a text message to her supervisor about her request for intermittent FMLA leave and upcoming medical visits (*id.* at ¶ 22). On June 8, 2023, the defendant terminated the plaintiff's employment for attendance reasons, and the plaintiff claims the defendant, for the first time, accused her of violating a company policy regarding the treatment of a patient (*id.* at ¶¶ 23–24). The plaintiff denies that this allegation was true, but the defendant listed the plaintiff as "non-rehirable" (*id.* at ¶ 24).

On August 2, 2024, the plaintiff sued the defendant in the Greenville County Court of Common Pleas, asserting claims for FMLA interference and retaliation and ADA discrimination/failure to accommodate and retaliation (*id.* at pp. 8–10). On September 6, 2024, the defendant removed the case to this court pursuant to federal question jurisdiction (doc. 1).

On September 13, 2024, the defendant filed its motion to stay litigation and compel arbitration or, alternatively, to dismiss (doc. 7). The defendant attached a copy of

---

[2] The complaint states "January 2024" but this appears to be a scrivener's error, as the termination date occurred in 2023 (*see* doc. 1-1 at pp. 3–4).

2

a purported ten-page offer letter that includes a mutual agreement to arbitrate and a confidentiality agreement (hereinafter the "Agreement") (doc. 7-1). This document states that the parties mutually agreed to submit the following to arbitration:

> [A]ny dispute arising out of Employee's employment or the termination of Employee's employment, including, but not limited to, (a) any claim of interference, discrimination, retaliation, or harassment based upon any basis, including . . . disability arising under any federal . . . statute, regulation, ordinance, order, or law, including, without limitation, . . . the Americans with Disabilities Act [and] the Family and Medical Leave Act;

(*Id.* at p. 3, ¶ 1). The Agreement further states:

> Employee agrees that arbitration is the exclusive remedy for all disputes arising out of or related to the Employee's employment with Employer and Employee agrees to waive all rights to a civil court action regarding Employee's employment and the termination of Employee's employment with Employer. Likewise, Employer agrees that arbitration is the exclusive remedy for all disputes arising out of or related to Employee's employment with Employer and Employer agrees to waive all rights to a civil court action regarding Employee's employment and the termination of Employee's employment with Employer.

(*Id.*). The Agreement permitted the plaintiff to file a charge with the Equal Employment Opportunity Commission ("EEOC") (*id.*) and required any demand for arbitration be filed within 180 days of the event giving rise to such claim (*id.* at p. 5, ¶ 5). It expressly waived any other statute of limitations period (*id.*). The defendant alleges that the three electronic signatures next to "Employee Signature" in the Agreement are the plaintiff's signature (*id.* at pp. 2, 7, 10). The defendant also claims that the plaintiff signed the Agreement on April 28, 2022 (*id.*).

On October 25, 2024, after receiving multiple extensions of time to file, the plaintiff filed a response to the defendant's motion, alleging that she never signed these documents (doc. 12). In support of this response, the plaintiff provided an affidavit wherein she stated that on April 27, 2022, she received an email from the defendant with a link to view a two-page offer letter, dated April 26, 2022, through Workday, which is the defendant's onboarding system (doc. 12-1 at p. 2, ¶¶ 1, 3). She claims the email and link only permitted her to view the offer letter, did not take her to any DocuSign links, and did

3

not send her to any arbitration or confidentiality agreements or otherwise mention them (doc. 12-1 at p. 2, ¶¶ 1–3). Because the plaintiff thought this offer letter was missing information about her bonus, she sent an email to the defendant's nurse recruiter, Rachel Sain, on April 28, 2022, requesting clarification (*id.* at p. 9). On April 29, 2022, Sain emailed the plaintiff again to remind the plaintiff to sign her offer letter that day (*id.* at p. 8), and the plaintiff responded that she was having connection issues on April 28, 2022, but would finish it on April 29, 2022 (*id.* at p. 7). The plaintiff stated that Workday required her to enter her electronic signature as an onboarding task but did not require her to view any specific document before entering her signature (*id.* at p. 3, ¶ 5). She also claims that the software did not map her signature to any particular document, and she had never seen the Agreement until after the defendant filed its instant motion (*id.* at ¶¶ 5, 7).

In reply, the defendant produced a declaration from its human resources technical service solutions architect, Kathryn McCauley, who stated that she reviewed the DocuSign signature envelope and provided the following timeline:

> April 27, 2022 at 6:24 p.m. the DocuSign package containing the full 10 pages of the Agreement and a unique identification number is created;
>
> April 28, 2022, at 9:31 p.m. the plaintiff opened the DocuSign package on IP address 174.241.169.100;
>
> April 28, 2022, at 9:32 p.m. the plaintiff signed the DocuSign package on the same IP address; and
>
> April 28, 2022, at 9:33 p.m. the defendant received the signed DocuSign package

(Doc. 13-1 at pp. 2–4, ¶¶ 3, 5–8). As her source for this timeline, McCauley cited a document that appears to be a cut-off email from a "Developer Support Engineer" named "Rafay," but no other information is provided about this document (*id.* at pp. 6–7). McCauley further stated that the plaintiff would not have been hired unless she signed the Agreement in all three locations, and the defendant would not have received the document without the plaintiff signing in all three locations (*id.* at p. 4, ¶ 9).

After receiving permission from the court, the plaintiff filed a sur-reply in

opposition to the defendant's motion, and, in support, the plaintiff provided a sample DocuSign certificate of completion, her supplementary affidavit, and a screenshot from the her cell phone (docs. 18, 18-1, 18-2). The sample DocuSign certificate is in a much different format than the document the defendant provided from Rafay (*compare* doc. 18-1, *with* doc. 13-1 at pp. 6–7). The plaintiff stated in her supplementary affidavit that her IP address on her cell phone for the past five years matches her screenshot, but this screenshot only shows the IP address of her phone while connected to her home's WiFi network and does not identify its IP address when connected to her carrier's mobile network (*see* doc. 18-2 at pp. 2–3). The screenshot appears to have an option to show three IP addresses, but no additional IP addresses were provided to the court (*see id.* at p. 3). At the time the plaintiff took this screenshot, she also selected the option to limit IP address tracking; however, it is unclear from the record whether this option was toggled on the relevant dates in April 2022 (*id.*).

With the court's permission, the defendant filed a supplemental declaration from McCauley (doc. 20) and a supplemental brief (doc. 22). McCauley supplemented her prior declaration with a DocuSign certificate of completion for the plaintiff's purported signature, and the format of this document matches the sample the plaintiff provided (*compare* doc. 20-1 at p. 1, *with* doc. 18-1). This certificate of completion states that a ten-page document was signed in three places from a link sent to heatherblack@aol.com from IP address 174.241.169.100 on April 28, 2022, at 5:32:35 p.m. after it was first viewed by the recipient at 5:31:53 p.m. and first sent at 5:31:39 p.m. (doc. 20-1 at 1). McCauley's supplemental declaration copies these new times, which are four hours earlier than those contained in her prior declaration (*compare* doc. 20, *with* doc. 13-1). The plaintiff filed a permitted final brief to challenge this evidence (doc. 26). Accordingly, these motions are fully briefed and ready for review.

## II. APPLICABLE LAW AND ANALYSIS

### A.  Contract Formation

Under the Federal Arbitration Act ("FAA"),

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA further provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  Section 4 also states that, when presented with such a petition, "the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*  On the other hand, if the "making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof" (the "Trial Provision").  *Id.*

Notably, "the Supreme Court has consistently encouraged a 'healthy regard for the federal policy favoring arbitration.'"  *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  However, "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate."  *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (citation and internal quotation marks omitted); *see also Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) ("It must be remembered that mandatory arbitration is not the default form of dispute resolution but rather is permitted only when the parties agree to it.").

The Court of Appeals for the Fourth Circuit has explained that when the making of the arbitration agreement is in issue, "the district court must employ the summary judgment standard as a gatekeeper, so a trial occurs only if there are genuine issues of

6

material fact." *Rowland*, 993 F.3d at 258 (citations and internal quotation marks omitted); *see also Berkeley*, 944 F.3d at 234 (noting that when deciding whether the parties have formed an agreement to arbitrate, "the court is obliged to conduct a trial under the Trial Provision when a party unequivocally denies that an arbitration agreement exists, and show[s] sufficient facts in support") (citation and internal quotation marks omitted). "In applying that standard, the court is entitled to consider materials other than the complaint and its supporting documents." *Berkeley*, 944 F.3d at 234. The defendant bears the "burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017) (citation omitted). When deciding whether an agreement to arbitrate was formed, courts should apply ordinary state-law principles that govern the formation of contracts. *Rowland*, 993 F.3d at 257.

It appears that both parties agree that South Carolina law governs the formation of the arbitration agreement at issue (*see* docs. 7-2 at p. 10; 12 at p. 4). "Under South Carolina law, a contract is formed between two parties when there is, inter alia, 'a mutual manifestation of assent to [its] terms.'" *Berkeley*, 944 F.3d at 236 (quoting *Edens v. Laurel Hill, Inc.*, 247 S.E.2d 434, 436 (S.C. 1978)); *see also Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 762 S.E.2d 696, 701 (S.C. 2014) ("A valid and enforceable contract requires a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement.") (emphasis in original). "Such mutual manifestation ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party." *Id.* (citation and internal quotation marks omitted); *see also Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003) ("The necessary elements of a contract are an offer, acceptance, and valuable consideration.").

The plaintiff argues that there was no agreement between the parties because she never saw nor signed the arbitration section of the Agreement and the defendant fabricated the agreement and forged the plaintiff's signature (doc. 12 at p. 3). The defendant, however, contends that the plaintiff signed the Agreement on the DocuSign

platform and has provided in support of its argument two declarations from McCauley, a copy of the Agreement allegedly signed by the plaintiff, and a copy of the DocuSign certificate of completion. The defendant argues that the DocuSign certificate of completion "conclusively establishes that [the plaintiff's affidavit] is just wrong" (doc. 13 at p. 3). However, the plaintiff contends that she never saw nor signed the full Agreement with the arbitration clause because she only received a two-page offer letter and has provided her own affidavits, emails from Sain, and a screenshot of her home WiFi IP address. As set out above, the plaintiff testified that she never saw, received, or signed the Agreement (doc. 12-1 at pp. 2–3, ¶¶ 1, 3, 7). There is also evidence from the emails between the plaintiff and Sain that support the plaintiff's argument that she did not sign anything on April 28, 2022, which is contrary to the defendant's evidence; specifically, the nurse recruiter, Sain, was still requesting that the plaintiff sign the "offer letter" one day later on April 29, 2022 (doc. 12-1 at p. 8). Moreover, the undersigned questions the defendant's evidence from DocuSign showing different time stamps — four hours apart — on different documents (*compare* doc. 13-1 at p. 6–7, *with* doc. 20-1 at p 1). McCauley's declarations also recite these conflicting times (*compare* doc. 13-1 at ¶¶ 3, 5–9, *with* doc. 20 at ¶¶ 5–6). There appears to be other unresolved issues of fact, such as the plaintiff's other cell phone IP addresses when connected to her carrier's mobile network or other WiFi networks versus the home WiFi network IP address that was provided to the court.

    Based on the foregoing discussion of the factual record, the undersigned finds that a genuine issue of material fact remains regarding the formation of the Agreement. *See, e.g., Boyles v. Langmore Cap., LLC*, No. 1:20-cv-545, 2020 WL 4719282, at *3 (M.D.N.C. Aug. 13, 2020) (finding a disputed question of material fact as to whether there was an agreement to arbitrate where the defendant presented evidence of an electronically signed arbitration agreement and the plaintiff presented evidence he did not sign the agreement)*; Gordon v. TBC Retail Grp., Inc.*, No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *5-8 (D.S.C. Aug. 11, 2016) (finding that certain plaintiffs could not be compelled to arbitrate their dispute when the defendant produced printouts showing either a screenshot

of a confirmation page indicating that the plaintiffs acknowledged the agreement or a typed name in the agreement's signature block indicating the plaintiffs signed the agreement, but the plaintiffs flatly denied signing the agreement, claimed that someone else must have signed it for them, and stated in declarations that their supervisors often filled out electronic forms for them). Accordingly, the undersigned concludes the issue should be resolved by a summary trial pursuant to 9 U.S.C. § 4. The Fourth Circuit Court of Appeals has noted that the determination of appropriate pretrial procedures is "reserved to the able lawyers for the parties and the sound discretion of . . . the district court." *Berkeley*, 944 F.3d at 242. Thus, should the district court adopt the recommendation herein, the undersigned further recommends that the district court require the parties to confer and submit a mutual proposed scheduling order within seven days of the district court's order.

### B.    *Unenforceability of Arbitration Agreement*

The plaintiff also argues that the Agreement is unenforceable because the defendant "has interfered with [the plaintiff's] right to file with the [EEOC]" because it requires a prospective plaintiff file an arbitration demand within 180 days of the event giving rise to the claim (doc. 12 at p. 4). The plaintiff does not cite any statutory or case law that supports this position (*see generally id.*). The plaintiff contends that because she would need to file with the EEOC before filing her demand for arbitration, she could not have possibly met the arbitration deadline set by Agreement (*id.* at p. 6). The defendant argues in reply that 180 days is not "unreasonably short" and courts have permitted the parties to limit the limitations period (doc. 13 at pp. 4–5). The defendant further argues that while the plaintiff could still file her EEOC charge, the Agreement did not require her to do so before submitting her demand for arbitration (*see id.* at p. 6).

The Agreement at issue includes a provision requiring an employee to file a demand for arbitration within 180 days of the event giving rise to the claim. Under the ADA, an employee is required to file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If the employee dual files with a state agency, this time frame is lengthened to 300 days. *Id.*

9

> The Supreme Court of the United States has stated:
>
> "[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013) (quoting *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)).  The Fourth Circuit has explained: "[a]s a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonably short." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 287 (4th Cir. 2007).  "Courts have frequently found contractual limitations periods of one year (or less) to be reasonable."  *Id.* (citing *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357–59 (6th Cir. 2004) (finding a six-month limitation period to be reasonable in a case with 42 U.S.C.A. § 1981 claims); *see also Fitzgerald v. Faucette*, No. 9:24-cv-00908-BHH-MGB, 2024 WL 5290929, at *6 n.5 (D.S.C. Apr. 23, 2024), *R&R adopted* No. 9:24-cv-00908-BHH, 2024 WL 5087128 (D.S.C. Dec. 12, 2024) ("[T]he undersigned is not convinced that '[t]he shortening of a statute of limitations from 3 years to 6 months is unreasonable.'  Indeed, '[c]ourts have frequently found contractual limitations periods of one year (or less) to be reasonable' in similar contexts.") (quoting *Bracey v. Lancaster Foods LLC*, 838 F. App'x 745, 749 (4th Cir. 2020) (other internal quotations omitted).

The undersigned finds that the Agreement does not unreasonably shorten the time period for filing with the EEOC.  While the plaintiff argues that it is impossible to pursue a claim under this Agreement because there was insufficient time to exhaust her administrative remedies before demanding arbitration, the plaintiff is mistaken.  Under the Agreement, she was not required to exhaust her administrative remedies before filing an arbitration demand.  The Agreement itself does not contain any exhaustion requirements, and the plaintiff does not cite any authority for the proposition that she was required to file a charge before proceeding to arbitration.  The plaintiff could have filed her EEOC charge

10

under this Agreement, but she was not required to do so.  The Agreement only required her to file her demand for arbitration during the same 180-day period as she could file her EEOC charge.   Therefore, should it be determined by a jury pursuant to Section 4 of the FAA that the parties formed an agreement to arbitrate, the undersigned recommends that the district court find that the limitations provision does not render the Agreement unenforceable.

### III. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court deny the defendant's motion to compel arbitration or, in the alternative, to dismiss (doc. 7) at this time and proceed to trial regarding formation of the arbitration agreement pursuant to Section 4 of the FAA.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

February 28, 2025
Greenville, South Carolina

**The attention of the parties is directed to the important notice on the next page.**

### *Notice of Right to File Objections to Report and Recommendation*

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).